**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. | ) |
| RUTH COLLINS, | ) |
| | ) |
| Plaintiff-Relator, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-2634-SDG |
| | ) |
| SHELITHA ROBERTSON; JACQUELYN | ) |
| WHITE; TRITAN, INC.; MO GRIGGS | ) |
| CONTRACTING, INC.; and ATLANTA | ) |
| CUSTOM MOTORS, LLC, | ) |
| | ) |
| Defendants. | ) |

**RELATOR'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Shelitha Robertson was the owner and controller of the corporate

co-defendants in this case, which include Atlanta Custom Motors, LLC, Mo Griggs

Contracting, Inc., and Tritan, Inc. SOF ¶ 1.

Defendant Robertson was found guilty of defrauding the Paycheck

Protection Program ("PPP") by knowingly and intentionally conspiring to unjustly

enrich herself by fraudulently obtaining PPP loans under false and misleading

pretenses and to conceal such conduct. SOF ¶¶ 4, 13.

Defendants fraudulently obtained PPP loans totaling $4,425,002.23 in

ordered restitution, representing fraudulent loan proceeds that they were not

entitled to receive. SOF ¶ 14.

1

Defendant Robertson was indicted on five counts: one count of Conspiracy to Commit Wire Fraud, three separate counts of Wire Fraud—one count for each of the corporate co-defendants in this case—and one count of Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity. SOF ¶ 2. She was convicted at trial on all five counts. SOF ¶ 13.

As shown below, because of her criminal conviction, Robertson and her three sham companies are estopped by statute from denying that they are liable under the FCA for these false claims and false statements.

Further, Defendant Robertson's trial and conviction resulted in a finding that her conduct led to nine false and fraudulent PPP loans, for which she was ordered to repay $4,425,002.23 in restitution. Applying the treble damages provision of the False Claims Act and the minimum mandatory civil penalties for nine false claims, the United States is entitled to a civil judgment of $8,850,004.46 in damages and $125,514 in minimum statutory civil penalties against Robertson herself, Atlanta Custom Motors, LLC, Mo Griggs Contracting, Inc., and Tritan, Inc., jointly and severally.

# I.    LEGAL STANDARDS

## A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In making this determination "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438. The second is to show that "there is an absence of evidence to support the nonmoving party's case. *Id.*

As to the timing of this motion, while the Eleventh Circuit requires that a party opposing a motion for summary judgment "should be given an adequate opportunity to complete discovery prior to consideration of the motion," (*Walker v. JPMorgan Chase Bank, N.A.*, 987 F. Supp. 2d 1348, 1352 (N.D. Ga. 2013) (quoting *Jones v. City of Columbus*, 120 F.3d 248, 253 (11th Cir. 1997))), the Eleventh Circuit explicitly refused to adopt a "blanket prohibition" on granting summary judgment before discovery. *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843 (11th Cir. 1989).

Where, as here, Defendants have had the full benefit of discovery and trial in the criminal case, there is no need to delay the resolution of the case on the merits. Rather, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment **at any time** until 30 days after the close of discovery." Fed. R. Civ. P. 56(b) (emphasis added). Similarly, the Local Rules for the United States District Court for the Northern District of Georgia instruct that "[m]otions for summary judgment **shall be filed as soon as possible**, but, unless otherwise ordered by the Court, not later than thirty (30) days after the close of discovery…." Local Rule 56.1(d) (emphasis added). Thus, this Motion is timely.

## B. The False Claims Act Imposes Civil Liability on Persons Convicted Under the Criminal Provisions of the Statute

The False Claims Act imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). It also imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). The FCA also imposes liability on any person who knowingly conspires to commit a violation of the Act. 31 U.S.C. § 3729(a)(1)(C).

Relevant here, the FCA contains an express estoppel provision giving preclusive effect to a criminal conviction on future civil actions:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e); *see also United States v. Anghaie,* 633 Fed. Appx. 514, 516 (11th Cir. 2015) (upholding the district court's grant of summary judgment to the government on FCA violations after defendant was convicted in related criminal case).

5

**C. Damages Under the FCA Are Set By Statute.**

The False Claims Act provides that a person held liable under the Act must pay treble damages suffered by the United States, along with civil money penalties in a range set by statute, with the precise amount set by the Court. 31 U.S.C. ¶ 3729(a)(1). That penalties range is adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 and has increased over time. *Id.*; *see also* 28 C.F.R. § 85.5. The Act mandates a penalty of not less than $13,946 and not more than $27,894 per false claim, record, or statement. 89 FR 9764, 9765.

## II.    ARGUMENT

### A. Robertson's Criminal Conviction Estops Her and the Sham Corporate Codefendants from Denying False Claims Act Liability for the Same Conduct For Which She Was Convicted.

Robertson's criminal convictions for her conduct in knowingly submitting, knowingly causing the submission, and knowingly conspiring to cause the submission of false claims regarding the fraudulent PPP loan applications estop both her and her sham corporate codefendants from contesting FCA liability for that same conduct. This is true whether the estoppel is founded on the FCA's estoppel provision, 31 U.S.C. § 3731(e), or the common law of collateral estoppel and/or vicarious liability. The court therefore should grant summary judgment to the United States on its FCA claims.

A. **The FCA's Estoppel Provision Precludes Robertson and the Sham Corporate Defendants From Denying FCA Liability.**

Robertson was convicted by a jury on all counts of fraudulently submitting PPP loan applications and fraudulently receiving more than $5.3 million in loan proceeds. That conviction estops her and the corporate codefendants from denying FCA liability for that conduct and those false claims under the estoppel provision of the FCA statute, 31 U.S.C. § 3731(e). That section provides that "a final judgment rendered . . . in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730." *Id*.

First, the FCA's estoppel provision applies here where the criminal proceeding charged, among others, fraud, and intent to defraud, by means of materially false and fraudulent pretenses, representations, and promises. *Id*. Thus, Robertson's conviction meets the fraud or false statement prong of the FCA estoppel provision.

Second, the conviction satisfies the "same transaction" requirement under Section 3731(e). In this action, both Robertson and the sham corporate defendants under her control are alleged to have violated the FCA by knowingly submitting, knowingly causing the submission, and knowingly conspiring to submit false

claims related to the described PPP loans. Those are the same loans by amount and date used to charge Robertson in the criminal indictment. Relator specifically seeks a False Claims Act judgment on the same three loans Robertson received on behalf of the three sham corporate defendants that Robertson has already been convicted of fraudulently receiving.

Third, the estoppel provision's requirement that essential elements of Robertson's criminal conviction meet or exceed the essential elements of the civil FCA claims are met here. The FCA violations asserted against Robertson and the sham corporate defendants are under 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C). The elements that must be met for Robertson to be liable under 3729(a)(1)(A) are that each (1) knowingly, (2) presented, or cause to be presented, (3) a false or fraudulent claim for payment or approval, (4) to the United States.

In the charging criminal indictment, Counts two through four charge that Robertson "did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice." SOF ¶ 16.

Robertson was convicted on all of these counts. SOF ¶ 13. This easily meets the elements of a violation of 3729(a)(1)(A).

The elements that must be met for Robertson and the sham corporate defendants to be held liable under Section 3729(a)(1)(B) are that each (1) knowingly, (2) made, used, or caused to be made or used, a false statement of fact, (3) that was material to a false claim. The only element of this not addressed above is the materiality question: whether it was material to the false claims that Robertson and the corporate codefendants presented fraudulent PPP loan applications.

The FCA defines materiality as having "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Plainly, it is material to payment of the PPP loan proceeds that Robertson lied on the PPP loan applications to receive those proceeds. But for the false statements, Robertson and the corporate co-defendants would not have received PPP loans. This is materiality at its most basic form. Robertson made multiple certifications on those loan applications (SOF ¶¶ 5-12), and but for those certifications, which were required to apply for a PPP loan, no proceeds would have been authorized or received by defendants.

Finally, the elements that must be met for Robertson and the sham corporate defendants to be held liable under Section 3729(a)(1)(C) are that each conspired to

commit a violation of the FCA. In the charging criminal indictment, Count I
mirrors Counts II through IV but adds a conspiracy charge to the conduct.
Specifically, Count I charges that Robertson "did knowingly and intentionally, that
is, with the intent to advance the conspiracy…. to commit an offense against the
United States, namely wire fraud…." SOF ¶ 15. Likewise, § 3729(a)(1)(C) simply
adds a conspiracy element to the FCA that provides liability when defendants
violate (a)(1)(A) or (B) (or any other provision of the FCA) when a conspiracy is
present. Robertson was convicted on Count I. SOF ¶ 13.

    Accordingly, Robertson's conviction should estop Robertson and her sham
companies—Atlanta Custom Motors, LLC, Mo Griggs Contracting, Inc., and
Tritan, Inc.—from denying their liability on these FCA violations. *See United
States v. FastTrain II Corp.,* 2017 WL 606346, 11 (S.D. Fla. 2017) (citing *Anghaie,*
633 Fed. Appx. at 516) (criminal conviction estops a defendant in a FCA case from
denying the essential elements of the offenses when the claims involve the same
transaction at issue in the defendant's prior criminal proceeding); *see also United
States v. Aleff*, 772 F.3d 508, 510 (8th Cir. 2014) (defendants who pled guilty to
conspiracy to defraud the US by submitting false applications for loan-deficiency
payments were estopped from denying essential elements of FCA offenses); *United
States ex rel. Nottingham v. Thomas*, 2015 WL 7424738 (E.D. Va. 2015) (criminal
conviction precludes denying liability); *United States ex rel. Green v. Schuykill*

*Products, Inc.*, 2014 WL 2154664 (M.D. Pa. 2014) (guilty plea for 18 U.S.C. § 371 violation conclusively established all factual issues as to civil liability under the FCA); *United States v. Karron*, 750 F. Supp. 2d 480, 487 (S.D.N.Y. 2011) (defendant in a FCA suit precluded from denying liability for false statements when previously convicted in criminal proceeding for the "same transaction."); *United States v. Mastellone*, 2011 WL 4031199 (S.D.N.Y. 2011) (defendant who pled guilty to felony charge of fraudulently stealing money from the US, in violation of 18 U.S.C. § 641, "estopped from denying the essential elements of the §§ 3729(a)(1)(A) and (B) offenses, since these claims involve the same transaction at issue in [defendant]'s prior criminal proceeding, at which he pled guilty"); *United States v. Sriram*, 2008 WL 516306 (N.D. Ill. 2008) (statutory estoppel proper where civil action involved the "same course of conduct" and overlapping "specific factual matters" as prior criminal case); *United States v. Eghbal*, 475 F. Supp. 2d 1008 (C.D. Cal. 2007) (no genuine issue of material fact regarding civil liability under FCA because defendants' prior convictions and admissions in plea agreements established that their false statements caused the Government "to pay out money").

Finally, that the three sham corporate defendants were not criminal defendants does not matter. Robertson was alleged to be the owner and controller of each of the corporate co-defendants in this case (SOF ¶ 1), submitted false

statements and certifications on behalf of each of the corporate co-defendants (SOF

¶¶ 3-4) , and received the fraudulent proceeds on behalf of each of the corporate

co-defendants (SOF ¶ 14). Therefore, the FCA's statutory estoppel provision

should equally apply to estop the three corporate defendants from denying liability

for the conduct in which Robertson was convicted. *See FastTrain,* 2017 WL

606346 (corporate defendant was estopped from denying liability under the FCA

where its owner and CEO, but not the corporation, was convicted in a criminal

proceeding).

> **B.    Common Law Collateral Estoppel and Vicarious Liability Prevent Robertson and Codefendants from Denying Liability**

Even if there were no FCA statutory estoppel provision, the court can and

should apply the federal common law doctrine of collateral estoppel to grant this

motion. Federal common law collateral estoppel applies where:

> (1) the issue must be identical in the pending case to that decided in the earlier proceeding; (2) the issue must necessarily have been decided in the earlier proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the earlier proceeding; and (4) the issue must actually have been litigated in the first proceeding.

*Montalbano v. Comm'r,* 307 Fed. Appx. 322, 323 (11th Cir. 2009) (citing *In re*

*Raiford,* 695 F.2d 521, 523 (11th Cir. 1983)). Therefore, "[c]ollateral estoppel bars

relitigation of an issue decided against a party who had 'a full and fair opportunity'

to litigate that issue in [an] earlier case." *Id.* (finding that because elements of

criminal tax evasion and civil tax fraud are identical, taxpayer was estopped under common law from denying liability for civil fraud) (citing *Allen v. McCurry,* 449 U.S. 90, 94-95 (1980)).

Collateral estoppel clearly applies here. First, the issue is identical. Second, this issue was litigated to a criminal conviction by a jury. Third, the issue of knowingly submitting, knowingly causing the submission, and conspiracy were all necessary elements to Robertson's criminal conviction.

The fourth and final element of collateral estoppel, whether there was a full and fair opportunity to litigate the issue, applies here to hold both Robertson and the corporate co-defendants liable. All defendants had a full and fair opportunity to litigate this issue of fraudulently obtaining PPP loans in the criminal case. Robertson was represented by counsel throughout her trial. Because the three corporate codefendants here were shell companies of which Robertson held sole control, their interests were fully aligned. And as cited above, the court in *FastTrain* agreed.

Robertson had actual authority on behalf of the three corporate co-defendants as the owner and authorized official with respect to submitting the fraudulent PPP loans. Robertson had the legal authority on behalf of the corporate co-defendants to certify and execute PPP loan documents. Because of these actions, Robertson received, in the name of the three sham corporate defendants,

more than $5.3 million in federal taxpayer funds to which Defendants were not entitled. Accordingly, Robertson's FCA liability for these actions within the scope of her employment/authority and ownership renders the companies liable under the FCA as well.

Having been convicted of the same conduct as alleged in this civil FCA case, Robertson and the corporate co-defendants may not now present evidence to the contrary in this civil proceeding. Robertson's convictions are a valid basis in common law for applying collateral estoppel and granting summary judgment to Relator.

### C.  The Court Should Award the Relator and the United States Treble Damages and Civil Penalties.

The Court has all the information it needs to award a judgment in favor of Relator and the United States on the PPP fraud scheme. The FCA provides that a violator shall pay treble damages and civil penalties. 31 U.S.C. § 3729(a)(1). Robertson's criminal conviction specifically names all the FCA defendants and includes the loan amounts that the Defendants received, with an exact damages calculation from the SBA of $4,425,002.23. Because Robertson was convicted on all Counts, this court should order treble damages, minus the restitution previously ordered of $4,425,002.23. This amounts to a judgment of $8,850,004.46 ($13,275,006.69 - $4,425,002.23).

14

In addition to treble damages, the FCA mandates an award of civil penalties. 31 U.S.C. § 3729(a)(1). The penalties range requires a minimum of $13,946 and not more than $27,894 per false claim or statement. 89 FR 9764, 9765.

Here, there are nine false claims, i.e., nine fraudulent PPP loan applications resulting in PPP loans which were subsequently forgiven by the federal Government. Applying only the minimum of $11,181 for each of the nine false claims, the Court should enter judgment for civil penalties in the amount of $125,514. The Court should therefore enter a judgment of $8,975,518.46 in favor of the United States against Robertson.

### III.    Conclusion

The Court should grant Relator's motion and enter judgment against Robertson, Atlanta Custom Motors, LLC, Mo Griggs Contracting, Inc., and Tritan, Inc., jointly and severally.

DATED this 21st day of January, 2025.[1]

/s/ Julie Bracker
Julie Bracker
Georgia Bar No. 073803
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, GA 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544

---

[1] Pursuant to Local Rules 7(d)(1) and 5.1(B), counsel certifies this filing was prepared using double-spaced Times Roman 14-point font with no more than 10 characters per inch.

Julie@fcacounsel.com