IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RUTH COLLINS,<br><br>  Plaintiff-Relator<br><br>v.<br><br>SHELITHA ROBERTSON;<br>JACQUELYN WHITE;<br>TRITAN, INC.;<br>MO GRIGGS CONTRACTING, INC. and<br>ATLANTA CUSTOM MOTORS, LLC,<br><br>  Defendants. | Case Number 1:22-cv-02634-SDG |

**DEFENDANT SHELITHA ROBERTSON'S; DEFENDANT ATLANTA CUSTOM MOTORS, LLC'S; DEFENDANT MO GRIGGS CONTRACTING, INC.'S AND DEFENDANT TRITAN, INC.'S SUPPLEMENTAL MOTION TO DISMISS ON GROUND OF THE FALSE CLAIMS ACT'S PUBLIC DISCLOSURE BAR AND LACK OF SUBJECT-MATTER JURISDICTION**

  Defendant Shelitha Robertson; Defendant Atlanta Custom Motors, LLC; Defendant Mo Griggs Contracting, Inc., and Defendant Tritan, Inc., file this Supplemental Motion to Dismiss on Ground of the False Claims Act's Public Disclosure Bar and Lack of Subject-Matter Jurisdiction, and respectfully move to dismiss this action pursuant to the public disclosure bar of the False Claims Act, 31

1

U.S.C. §§ 3729 *et seq.* (FCA), 31 U.S.C. § 3730(e)(4)(A), and for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants show that the conduct which forms the basis for Plaintiff Ruth Collins' Complaint, Dkt. # 1, was the subject of public disclosures prior to Plaintiff's filing of this action on July 1, 2022.[1]

## I. **BACKGROUND**

As shown by the attachments to Defendants' Motion to Dismiss, on August 14, 2020, Chandra Norton was charged by criminal information with one count of wire fraud conspiracy for submitting, or causing the submission of, "at least eleven" false Paycheck Protection Program (PPP) loan applications together with an "Individual 1." *See* Dkt. # 24-2, pp. 4-5.

On June 16, 2022, the Atlanta Journal-Constitution published an article with the title "DeKalb still contracting with company founded by woman guilty of PPP fraud/Chandra Norton pled guilty to federal charges in 2020" (AJC Article). *See* Exhibit A. The AJC Article cited the August 2020 criminal information against Norton, stating, in relevant part, that "**[t]he nine-page charging document, filed in**

---

[1] Counsel for Defendants discovered the public disclosures in investigating public disclosures relating to Chandra Norton while preparing Defendants' response in opposition to Plaintiff's request in her Motion for Partial Summary Judgment for an award of damages in relation to amounts of Paycheck Protection Program loans received by Norton. *See* Dkt. # 31-1, pp. 14-15.

**the U.S. District Court for the Northern District of Georgia, accuses her of conspiring with an unnamed 'Individual 1' to file nearly a dozen 'false and fraudulent' PPP loan applications, an initiative intended to keep small businesses afloat amid the crush of COVID-19.**" *Id*., p. 4 (emphasis added). The AJC Article furthermore stated that "[a]t least five of the loans Norton and 'Individual 1' requested between April and May 2020 were ultimately provided, totaling more than $7.8 million." *Id*. It noted that Norton had pleaded guilty in November of 2020, but that proceedings had been postponed as a result of the fact that Norton was "'assisting the government in the investigation and prosecution of others…'" *Id*. at 5. The AJC Article furthermore posted a link to a copy of the criminal information against Norton. *See* Exhibit B. Several days later, on June 21, 2022, the Editorial Board for the Atlanta Journal-Constitution published an editorial repeating the facts set forth in the AJC Article. *See* Exhibit C.

On July 1, 2022, Plaintiff filed her Complaint, alleging that Defendant Shelitha Robertson and others conspired to secure PPP loans through false statements and received over $5.3 million in PPP funds. *See* Dkt. # 1, ¶ 31. Plaintiff became aware of the apparently fraudulent PPP loans by Ms. Robertson and her companies while performing research for a television show. *Id*. at ¶ 38.

## II. ARGUMENT

The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, provides, in pertinent part, that:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed… (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The FCA's public disclosure bar "deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through certain channels." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 285 (2010). The bar has a broad sweep. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011) (quoting *Wilson*, at 290). It strikes "'a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits'" *Kirk*, at 413 (quoting *Wilson*, at 294).

The Court of Appeals uses a three-part test to determine whether the public disclosure bar applies. *See United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294, 1300 (11th Cir. 2024). First, the Court asks whether the allegations made by the plaintiff have been publicly disclosed. *Id.* (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n. 4 (11th Cir. 1994)). If

4

the answer is yes, the Court asks whether the allegations in the complaint are "'substantially the same' as ... allegations or transactions contained in public disclosures.'" *Id*. (quoting *Cooper*, at 565 n. 4). If the answer to that question is yes, the Court asks whether the plaintiff is an original source of the information. *Id*. (quoting *Cooper*, at 565 n. 4).

Pursuant to the test to determine whether an action is barred under the FCA's public disclosure bar, Plaintiffs allegations were publicly disclosed by the AJC publications prior to Plaintiff's filing of her complaint. The AJC Article stated that Norton had conspired with an "Individual 1" to file "nearly a dozen" false PPP loan applications. *See* Exhibit A, p. 4. This "Individual 1" was Ms. Robertson, as demonstrated by the Indictment against Ms. Robertson in the action of United States v. Robertson, case # 1:22-cr-00432, in this Court, which alleged both Ms. Robertson and Norton were co-conspirators.

Under the second requirement for the public disclosure bar, the allegations in Plaintiff's Complaint are also "substantially the same" as the allegations in the AJC Article. "Substantially the same" does not mean identical but "significant overlap." *See Jacobs*, 113 F.4th at 1300. All that is required is "significant overlap, not that a mirror image of the complaint's allegations had been publicly disclosed." *Id.* at 1302-1303.

The AJC Article reported that Norton was charged with conspiring with another individual to file nearly a dozen false and fraudulent PPP loan applications in April and May of 2020, and were provided PPP loans totaling more than $7.8 million. *See* Exhibit A, p. 4. It furthermore published a copy of the criminal information against Norton, setting forth all of the Government's allegations regarding the charged conspiracy. *See* Exhibit B. In this case, Plaintiff alleged in her Complaint that Ms. Robertson conspired with her partner and the Defendant entities to secure PPP loans through false statements and received over $5.3 million in PPP funds. See Dkt. # 1, ¶ 31. The AJC Article disclosed the charged conspiracy involving Norton and Ms. Robertson, as well as the approximate number of fraudulent PPP loans obtained by the conspiracy, prior to Plaintiff's filing of this action. The fact that the AJC Article did not expressly name Ms. Robertson or her companies does not prevent a finding that there is significant overlap between the allegations set forth in the AJC Article and the allegations in Plaintiff's Complaint.

Finally, the FCA's public disclosure bar will not apply to bar a plaintiff's action if the plaintiff is an "original source" of the information. The FCA defines an "original source" as an individual whom "prior to a public disclosure… has voluntarily disclosed to the Government the information on which allegations or

transactions in a claim are based…" 31 U.S.C. § 3730(e)(4)(B). As the Court of Appeals has observed:

> If the public disclosures are "already sufficient to give rise to an inference" of fraud, cumulative allegations do "not materially add to the public disclosures." [*United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 815 (11th Cir. 2015)] (citing *United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014)). "[B]ackground information [and details] that help[ ] one understand or contextualize a public disclosure is insufficient to grant original source status" under the FCA. *Id*.

*Jacobs*, 113 F.4th at 1303.

Plaintiff's allegations do not add to the public disclosures in the AJC Article. The AJC Article identified the alleged conspiracy involving Norton and Ms. Robertson and the approximate number of fraudulent PPP loan applications submitted by the conspirators in April and May of 2020. The fact that Plaintiff identifies Ms. Robertson and her companies constitute mere details of, or background information for, the conspiracy disclosed in the AJC Article.[2]

Furthermore, the fact that Plaintiff may have disclosed information to the Government prior to filing her action pursuant to the FCA is immaterial. As stated

---

[2] Plaintiff makes only speculative allegations in support of her opening contention in her Complaint that Ms. Robertson and Jacquelyn White allegedly conspired to receive, and received, forgiveness for PPP loans, and does not allege a single, particular example of the submission of a claim for forgiveness to the government, in contravention of the requirements of Federal Rule of Civil Procedure 9(b). *See* Dkt. # 1, ¶ 3.

in the AJC Article, Norton, a member of the conspiracy, was cooperating with the Government in its investigation and prosecution of Ms. Robertson since at least the time that Norton was charged in August of 2020. See Exhibit A, p. 5.

Plaintiff fails to set forth facts establishing that she is an original source either in her Complaint or in her demand for partial summary judgment. Only in her response to Defendants' Motion to Dismiss does Plaintiff make the conclusory statement that she "is also an original source of the fraud allegations in that her FCA complaint predated the criminal indictments against both Norton and Ms. Robertson." Dkt. # 27, p. 9. Plaintiff's conclusory assertions are insufficient to establish that she is an original source of the information which she alleges, or that her allegations allegedly "materially add" to the information in the prior, public disclosures. *See U.S. ex rel. Brown v. Walt Disney World Co.*, 361 Fed.Appx. 66 (11th Cir. 2010) (*per curiam*) ("Plaintiff provided nothing, other than her own conclusory allegation, to show that she was an original source of the information on which her complaint was based") (citing 31 U.S.C. § 3730(e)(4)(B)).

*Jacobs* supports a finding that Plaintiff's action is barred by the FCA's public disclosure bar. In that case, the plaintiff, a foreclosure attorney, brought a *qui tam* action against JP Morgan Chase on behalf of the United States, alleging that JP Morgan Chase violated the FCA by forging mortgage loan promissory notes and

8

submitting false reimbursement claims to Fannie Mae and Freddie Mac for loan servicing costs. 113 F.4th at 1298. Specifically, Jacobs alleged that JP Morgan Chase concocted a scheme to forge endorsements on millions of loans using signature stamps bearing the names of previous Washington Mutual employees years after Washington Mutual's collapse. *Id*.

The District Court dismissed Jacobs' complaint on the grounds that Jacobs failed to state a claim in failing to failed to allege JP Morgan Chase's fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b), and that the FCA's public disclosure provision independently bars Jacobs' suit because online blog articles published before Jacobs filed his lawsuit alleged that JP Morgan Chase employees would use former Washington Mutual employees' stamps to fraudulently endorse loan promissory notes. 113 F.4th at 1299. On appeal, the Court of Appeals found that the three articles were available before Jacobs filed his initial complaint, and that the articles significantly overlapped with the allegations in Jacobs' complaint, including by virtue of the fact that they all mentioned JP Morgan Chase's alleged fraudulent stamping scheme and questioned the validity of the endorsements on the loans. *Id*. at 1301, 1302. The Court furthermore found that Jacobs was not an "original source" of the information, concluding that "[t]he publicly revealed information about the so-called stamping scheme gives rise to the inference of FCA

fraud because we can infer from the blog articles' details that there was general fraud, which led to false submissions to the government—defeating Jacobs's position that he is an original source of the information." *Id.* at 1304 (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 808, 815 (11th Cir. 2015); *United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014)).

As with the blog articles in *Jacobs*, the AJC Article in this case reported that there was a conspiracy between Norton and another individual (Ms. Robertson) to submit approximately a dozen fraudulent PPP loan applications, giving rise to an inference that false claims were submitted to the Government in violation of the FCA. The AJC Article was published before Plaintiff filed her FCA suit, and reported on a conspiracy to commit PPP loan fraud which included the conduct on which Plaintiff based her FCA claims.

In opposing Defendants' Motion to Dismiss, Plaintiff makes a request for the Court to make a finding that "no qualifying public disclosure under the FCA's public disclosure bar that pre-dates Relator's Complaint, and moreover that Relator is an original source of the fraud allegations contained therein." Dkt. # 27, p. 10. Plaintiff is not entitled to any of her requested findings. Plaintiff has presumably been aware of Norton's involvement in the conspiracy since the Indictment against Ms.

Robertson was filed in December of 2022. She has had approximately two years prior to her moving for partial summary judgment in which to search for potential public disclosures concerning Norton.

The June 2022 AJC publications constitute public disclosures published prior to Plaintiff's filing of her action pursuant to the FCA. The allegations in the public disclosures moreover substantially overlap the allegations in Plaintiff's Complaint. Finally, Plaintiff is not an "original source" for the reason that Plaintiff's allegations do not materially add to the allegations in the public disclosures, but at most merely provide additional detail or background information. Plaintiff is subject to the FCA's jurisdictional bar, and the Court accordingly lacks jurisdiction under the FCA to hear the action. *See United States ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*, 841 F.3d 927, 937 (11 Cir. 2016). Defendants therefore respectfully request that the Court dismiss this action.

### III. CONCLUSION

Based upon the grounds and authorities set forth herein, Defendant Shelitha Robertson; Defendant Atlanta Custom Motors, LLC; Defendant Mo Griggs Contracting, Inc., and Defendant Tritan, Inc., respectfully request that the Court grant Defendants' Supplemental Motion to Dismiss on Ground of the False Claims Act's Public Disclosure Bar and Lack of Subject-Matter Jurisdiction, and dismiss

this action pursuant to the public disclosure bar of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (FCA), 31 U.S.C. § 3730(e)(4)(A), and for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted, this 25th day of February, 2025.

*/s/ Anthony C. Lake*_____
Anthony C. Lake
Georgia Bar # 431149
GILLEN LAKE & CLARK LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
(404) 842-9700
aclake@glcfirm.com

Counsel for Ms. Shelitha Robertson; Tritan, Inc.; Mo Griggs Contracting, Inc. and Defendant Atlanta Custom Motors, LLC

# **CERTIFICATE OF COMPLIANCE**

Counsel for Defendant Shelitha Robertson; Defendant Tritan, Inc.; Defendant Mo Griggs Contracting, Inc., and Defendant Atlanta Custom Motors, LLC certifies pursuant to LR 7.1(D) that this document has been prepared in Times New Roman 14-point font as approved by the Court in LR 5.1(B).

*/s/ Anthony C. Lake*_____
Anthony C. Lake
Georgia Bar # 431149
GILLEN LAKE & CLARK LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
(404) 842-9700
aclake@glcfirm.com

Counsel for Ms. Shelitha Robertson; Tritan, Inc.; Mo Griggs Contracting, Inc. and Defendant Atlanta Custom Motors, LLC

# CERTIFICATE OF SERVICE

Counsel for Defendant Shelitha Robertson; Defendant Tritan, Inc.; Defendant Mo Griggs Contracting, Inc. and Defendant Atlanta Custom Motors, LLC certifies that counsel has this 25th day of February, 2025, filed this document with the Clerk of Court using the Court's Case Management/Electronic Case Filing (CM/ECF) system, which will automatically serve the document on all counsel of record. In addition, pursuant to the Court's Order dated July 5, 2024, counsel has served the document by e-mailing a copy the document to:

Anthony DeCinque
United States Attorney's Office
600 Richard B. Russell Federal Building
75 Ted Turner Drive, S.W.
Suite 600
Atlanta, Georgia 30303
anthony.decinque@usdoj.gov

/s/ Anthony C. Lake
Anthony C. Lake
Georgia Bar # 431149
GILLEN LAKE & CLARK LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
(404) 842-9700
aclake@glcfirm.com

Counsel for Ms. Shelitha Robertson; Tritan, Inc.; Mo Griggs Contracting, Inc. and Defendant Atlanta Custom Motors, LLC